## AFFIDAVIT OF SPECIAL AGENT CHRISTIAN BRACKETT

I, Christian Brackett, being duly sworn, state under oath as follows:

1.      I am a Special Agent with the Drug Enforcement Administration ("DEA") of the United States Department of Justice, and have been so employed since 1997. I am currently assigned to the Boston Office of the New England Field Division, and my primary duties include the investigation of organized narcotics traffickers. Since joining DEA, I have participated in over 100 narcotics investigations, both as a case agent and in a subsidiary role. Those investigations have resulted in the arrest and prosecution of hundreds of individuals and the seizure of large quantities of cocaine, heroin, ecstasy, OxyContin, marijuana, methamphetamine, and other controlled substances. I have debriefed over 100 defendants, informants, and witnesses with personal knowledge regarding narcotics trafficking activities and the operation of narcotics trafficking organizations. I have participated personally in numerous aspects of narcotics trafficking investigations, including executing search and arrest warrants, conducting surveillance, using confidential informants, acting in an undercover capacity, supervising controlled purchases of narcotics and conducting court-authorized interceptions of wire and electronic communications. Based upon my training and experience, I am familiar with narcotics traffickers' methods of operation, including the distribution, storage, and transportation of narcotics, as well as the collection of illicit proceeds from drug trafficking activities. Specifically, I am familiar with the manner in which narcotics traffickers use vehicles, human carriers, common carriers, mail and private delivery services, and a variety of other means to transport and distribute narcotics and narcotics proceeds. I am also familiar with the methods of operation used by drug traffickers, including, among other things, those relating to trafficking,

1

storing, and transporting narcotics; the collection of proceeds of trafficking activities; use of tools of the drug trade; and arranging and executing drug transactions, including the prices for drugs and how such transactions are negotiated.

## INTRODUCTION

2.     This affidavit is submitted in support of a criminal complaint charging JOSE BAEZ GONZALES, a/k/a FRANCIS MEJIA a/k/a MIGUEL HERNANDEZ a/k/a JULIO PENA a/k/a JORGE PICHARDO a/k/a HECTOR REYNOSO ("FRANCIS"), MICHELLE MARTINEZ, a/k/a SUSANNE ALAMO a/k/a TAMIA FUENTES RODRIGUEZ a/k/a ELIZ ORTIZ ("MARTINEZ"), ALEXIS SERRANO, a/k/a ALEXIS MARTINEZ ("SERRANO"), ALBERTO PEREZ, a/k/a/ "CHISPA" ("PEREZ"), ESTEFAN BERROA a/k/a "MENOR" ("MENOR") (collectively, "Target Subjects") of conspiring to distribute and to possess with intent to distribute heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §846.

3.     For reasons set forth in this affidavit, I believe probable cause exists to conclude that the Target Subjects have conspired to distribute and to possess with intent to distribute heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §846.

4.     Based on the information detailed below, I believe that FRANCIS and MARTINEZ currently reside at 17 Shillington Avenue, 2nd Floor, Lynn, MA ("Target Location #1") and use the location to stash heroin, drug proceeds, and papers related to the distribution of narcotics. Target Location #1 is located on Shillington Avenue, which itself is a small dead-end street in Lynn, MA. It is a grey vinyl-sided, three-story residential structure. There are three apartments inside 17 Shillington Avenue – one on each floor. Two entrances are located at the front of the building. As viewed from Shillington Avenue, the left door leads to the first floor

2

apartment and the right door leads to the second and third floor apartments. Located on the second floor, Target Location #1 is accessed through the door on the right. The right front door is white in color and the number "17" is clearly marked to the left of the door.

5.     According to a confidential informant (CS-2) discussed below, FRANCIS and his girlfriend "MICHELLE" recently moved to an apartment on Shillington Avenue in Lynn, MA. Information obtained from the Tracy Elementary School in Lynn, MA, reveals that MARTINEZ enrolled her son at the school on March 4, 2011, and listed her home address as 17 Shillington Avenue, #2, Lynn, MA. In addition, agents have observed FRANCIS leaving 17 Shillington Avenue through the doorway on the right-side of the building to consummate a heroin transaction as recently as May 10, 2011. Agents performing undercover physical surveillance have also recently observed FRANCIS and MARTINEZ walking together from the direction of 17 Shillington Avenue to a black Infiniti FX, MA Reg. 6LX880, parked in the area of the intersection of Shillington Avenue and Linwood Street.[1] FRANCIS and MARTINEZ have been seen operating this vehicle on a regular basis during the course of this investigation. According to the records of the Registry of Motor Vehicles, a black Infiniti FX bearing MA registration 6LX880 is registered to Susanne ALAMO. A utilities check revealed that the electric service to Target Location #1 is listed to Susanne ALAMO. Registry of Motor Vehicle records further

_____

[1] During covert surveillance, agents have observed FRANCIS and MARTINEZ together on Shillington Avenue. For instance, on April 26, 2011, agents observed FRANCIS and MARTINEZ walking from the direction of Target Location #1 to a black Infiniti FX bearing MA registration 6LX880 parked at the corner of Shillington Avenue and Linwood Street. Agents followed FRANCIS and MARTINEZ, who drove off together in the Infiniti FX, to a business called "All Checks Cashed," 62 South Common Street, Lynn, MA. This business is a check-cashing and money-transfer (wire) store. As recently as May 17, 2011, I saw this black Infiniti FX parked outside Target Location #1 at approximately 7:00 a.m.

show that a green Mercury van bearing MA Reg. 9GD-920 is also registered to Susanne ALAMO. On March 19, 2011, members of the Massachusetts State Police arrested Alberto PEREZ in this green Mercury van for possession of Class A and B controlled substances with intent to distribute following a routine motor vehicle stop. As described below, PEREZ is a runner for FRANCIS in the heroin distribution organization. On May 18, 2011, after MARTINEZ's arrest, agents determined that Susanne ALAMO is an alias used by MARTINEZ.

6.     Based on the information set forth below, I further believe that FRANCIS, SERRANO, MARTINEZ and others use a clothing store called BUILI FASHIONS, 233 Union Street, Lynn, MA ("Target Location #2") to conduct their drug business.

7.     Because this affidavit is being submitted for the limited purpose of establishing the requisite showing of probable cause for the issuance of a criminal complaint, I have not included each and every fact known to me concerning this investigation. The facts herein are based on my personal participation in this investigation, including but not limited to, first-hand observations of the Target Subjects and others, my review of audio and video recordings, my interviews of informants and participants in the events set forth in this affidavit, my supervision of undercover and controlled purchases of narcotics, telephone toll analysis, and my conversations with and review of reports from other law enforcement officers who have assisted in this investigation.

## OVERVIEW OF THE INVESTIGATION

8.     The investigation to date has revealed that FRANCIS and SERRANO are active drug traffickers who are selling hundreds of grams of heroin and cocaine in the area of Lynn, Massachusetts. PEREZ and other individuals discussed in this affidavit are runners or

4

distributors for this operation. MARTINEZ, who is SERRANO's sister and FRANCIS's live-in girlfriend, assists in the laundering of narcotics proceeds. The investigation has also revealed that MARTINEZ is selling Puerto Rican birth certificates and false social security cards to illegal aliens so they can use the documents to obtain false identification documents.

9.     SERRANO currently has an open case in Lynn, MA, District Court, for charges of distributing/dispensing a Class B controlled substance, cocaine. SERRANO's criminal history also includes a charge on March 16, 2006 in Salem, MA District Court for possession with intent to distribute a Class B controlled substance, cocaine.

10.     PEREZ currently has an open case in Lynn, MA District Court for a charge of possession with intent to distribute a Class A controlled substance, heroin, and a Class B controlled substance, cocaine. PEREZ's criminal history also includes a charge on November 2, 2010 in Salem, MA District Court, for possession with intent to distribute a Class E controlled substance. That charge was later dismissed.

11.     MENOR currently has an open case in Lynn, MA District Court for a charge of possession with intent to distribute a Class A controlled substance, heroin, and a Class B controlled substance, cocaine.

12.     FRANCIS has a long criminal history, which includes, among other things, two convictions for drug-related offenses and two convictions for illegal reentry after deportation. Immigration records show that FRANCIS has been deported on three occasions, specifically, on October 5, 1993, on September 30, 1998, and on May 10, 2003.

13.     MARTINEZ has an active default warrant in Massachusetts for operating after suspension under her alias Tamia Rodriguez. She also has two convictions under the same alias-

5

for fraudulent statements on an application and for forgery. Martinez was previously deported from the United States on August 18, 2004.

## PROBABLE CAUSE

### I.    Confidential Source Information

14.    Since late 2010 and early 2011, three confidential sources (hereinafter referred to as CS-1, CS-2, and CS-3) have been providing information to DEA and the Lynn, MA Police Department regarding Target Subjects  and others who are involved in the distribution of cocaine and heroin in the Lynn, MA area.

#### CS-1 Information

15.    CS-1 has been cooperating with the Lynn Police Department since late 2010 and recently with agents from DEA and the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE). CS-1 has not cooperated in the past with law enforcement but his/her information is believed to be reliable because some of his/her information has been corroborated by agents during this investigation through undercover purchases of heroin along with one-party consent video and audio recordings as well as photographs. CS-1 has been providing information as a concerned citizen and for monetary reward. CS-1 currently has open cases in Massachusetts for larceny. CS-1 learned the information s/he reported to law enforcement agents through personal observations and conversations with the Target Subjects.

16.    CS-1 informed agents that FRANCIS and SERRANO are running a cocaine and heroin distribution organization in the Lynn, MA area. According to CS-1, over the last few months, SERRANO and FRANCIS have had several couriers working for them, including a male

6

known as "CHISPA", whom CS-1 subsequently identified through a Massachusetts Driver's
license photograph as PEREZ. CS-1 has also identified other individuals who act as couriers for
FRANCIS and SERRANO: Estefan BERROA and a male known to CS-1 only as "MENOR."[2]
CS-1 also stated that SERRANO's sister, MARTINEZ, who is also FRANCIS's girlfriend,
obtains and then illegally sells Puerto Rican birth certificates to illegal aliens and individuals who
were previously deported from United States.

17.     On April 29, 2011, CS-1 reported to agents that SERRANO and FRANCIS
recently had a falling out and, as a result, moved everything out of a joint stash apartment they
had previously maintained at 11 Sachem Street, #3, Lynn, MA. After the argument, FRANCIS
moved his stash, which included approximately 120 grams of heroin, a heroin press, a Colt 45
pistol and an AR-15 assault-type rifle, to Target Location #2. CS-1 stated that the AR-15 rifle
was concealed inside a golf bag with a driver cover over the part that was sticking out. For
reasons set forth below, it appears that FRANCIS and SERRANO have reconciled their
differences.

18.     On May 1, 2011, CS-1 contacted agents and reported that earlier that day
(between 3:00 a.m. and 4:00 a.m.), FRANCIS received a shipment of 3 kilograms of heroin and 2
kilograms of cocaine. CS-1 reported that during that morning, s/he went to Target Location #2
and observed FRANCIS, MARTINEZ and another male known to CS-1 only as "MORENO,"
cut up and re-package the heroin and cocaine on top of a clothing display table inside of Target
Location #2. CS-1 stated that some of the drugs were packaged for re-sale and left inside Target

_____

[2] On May 18, 2011, after MENOR's arrest, agents determined that MENOR and
BERROA are the same person.

7

Location #2. The remaining drugs were moved in bulk form to another stash location, which agents now believe to be Target Location #1.

19.     On May 13, 2011, CS-1 informed agents that on the evening of May 12, 2011, CS-1 was socializing with FRANCIS's runner "MENOR." While they were socializing, CS-1 overheard a Nextel direct connect telephone conversation between MENOR and FRANCIS. During the conversation, FRANCIS told MENOR that FRANCIS delivered drug proceeds to a heroin source in New York and ordered "five brown pants" (which CS-1 knows to mean five kilograms of heroin) to be delivered within a few days. FRANCIS further instructed MENOR not to sell more than 50 grams of heroin at a time to customers so their current supply in Lynn, MA, lasts until this delivery is made.

20.     On May 13, 2011, CS-1 spoke with FRANCIS. During their conversation, FRANCIS informed CS-1 that he was expecting the arrival of a shipment of heroin on or about Monday of the week of May 16, 2011, and that as a result, FRANCIS's supply of heroin would be plentiful.

### CS-2 Information

21.     CS-2 has been cooperating with DEA since May 2010. CS-2's information is believed to be reliable because CS-2's information has led to the arrest of two individuals and the seizure of approximately 2,000 grams of heroin within the past year. CS-2 has an open case in the District of Massachusetts and is providing the information in hopes of obtaining a reduced sentence. While CS-2 has provided reliable information, CS-2 has not been willing to testify in court or provide proactive assistance due to safety concerns. CS-2 learned the information s/he reported to law enforcement agents through various observations while with FRANCIS and

8

through conversation with FRANCIS.

22.     In March 2011, CS-2 provided information to agents that FRANCIS is involved in selling heroin in the Lynn, MA area. According to CS-2, FRANCIS uses three different vehicles to deliver heroin and has several people working for him. CS-2 believes that one of the individuals is SERRANO, whom CS-2 believes is FRANCIS's brother-in-law. FRANCIS told CS-2 that he uses several different apartments to stash his drugs and drug proceeds. According to CS-2, FRANCIS recently moved with his girlfriend "MICHELLE" to an apartment on Shillington Avenue in Lynn, MA (which is the street on which Target Location #1 is located).

23.     On March 24, 2011, FRANCIS told CS-2 that two of his drug runners were recently arrested for drug charges. A Massachusetts State Police report confirmed that a few days earlier, on March 22, 2011, PEREZ and BERROA (MENOR) were arrested for possession with intent to distribute Class A and class B controlled substances following a routine traffic stop in Saugus, MA. PEREZ and BERROA (MENOR) were traveling in a green Mercury van registered to Susanne ALAMO (MARTINEZ), who is listed on the electric service to Target Location #1.

### CS-3 Information

24.     On May 12, 2011, agents interviewed an individual (hereinafter referred to "CS-3") over the telephone regarding information in his/her possession about FRANCIS and MARTINEZ. CS-3 is an anonymous source of information. Because agents do not know CS-3's full name, agents have not been to determine his/her criminal history. CS-3 agreed to provide information to agents but does not want to provide proactive assistance to law enforcement or testify in court due to safety concerns. While CS-3 has not provided information in the past to

9

law enforcement, CS-3's information is believed to be reliable because it is consistent with information provided by CS-1 and CS-2, and it is also consistent with agents' observations in this investigation.

25.     CS-3 reported that FRANCIS is a large cocaine dealer in the Lynn, MA area and MARTINEZ is illegally selling Puerto Rican identification documents. According to CS-3, MARTINEZ obtains the documents directly from a source in Puerto Rico and then sells them to illegal aliens in the Lynn, MA area. CS-3 stated that MARTINEZ has someone who works for an insurance company who checks these documents to make sure they are clean before she sells them.

26.     CS-3 reported that FRANCIS was born in the Dominican Republic and was previously deported from the United States after being convicted of a drug crime. CS-3 stated that FRANCIS entered the United States illegally and is currently using fake identification. CS-3 did not know the name on the fake identification document.

27.     CS-3 reported that MARTINEZ was also born in the Dominican Republic and is also living in the United States illegally. CS-3 stated that MARTINEZ's real name is Michelle Miranda MARTINEZ-MARTES, but she is currently using a false identification under another name. CS-3 did not know what false name MARTINEZ is using.

28.     CS-3 reported that MARTINEZ and her boyfriend FRANCIS have a clothing store on Union Street in Lynn, MA called BUILI FASHIONS (Target Location #2). CS-3 stated that FRANCIS and MARTINEZ use the business to stash and launder illegal proceeds from drugs and other crimes. CS-3 reported that MARTINEZ and FRANCIS use the illegal cash they earn from selling drugs and false identifications to make improvements to Target Location #2

10

and to buy clothing and other merchandise, which they then sell from that location. CS-3 stated

that MARTINEZ drives to New York to purchase clothing and merchandise with the cash

proceeds derived from selling narcotics and fraudulent identification documents. CS-3 stated

that FRANCIS and MARTINEZ also use the Target Location #2 to stash drug proceeds. CS-3

stated that a few weeks before providing information to agents on May 12, 2011, CS-3 was

inside Target Location #2 and observed a large amount of cash stashed inside a storage room

near the dressing rooms inside the store.

## II.    Undercover Purchases of Narcotics

### March 11, 2011 Undercover Purchase of Heroin from SERRANO

29.    On March 11, 2011, an agent acting in undercover capacity ("UC-1") purchased

five grams of heroin from SERRANO for $400. Following the purchase of narcotics, agents

observed SERRANO go directly to Target Location #2 with the drug proceeds.

30.    At approximately 1:18 p.m. on March 11, 2011, UC-1 and CS-1 drove to Family

Dollar, 200 Union Street, Lynn, MA, as instructed by SERRANO. The location of the purchase

is across the street from Target Location #2. UC-1 had a concealed video/audio recorder in his

possession and $450 in serialized government funds to make the purchase. Other undercover

agents performed physical surveillance of the planned transaction.

31.    While driving to Family Dollar, CS-1 received a call from SERRANO, which

UC-1 monitored. SERRANO told CS-1 to go into Family Dollar and meet him alone. Despite

this instruction, UC-1 entered Family Dollar to engage in the drug transaction with SERRANO

directly. After entering the Family Dollar, UC-1 walked down the second aisle and met with

SERRANO. SERRANO handed UC-1 a coffee mug that contained a plastic bag of suspected

11

heroin. UC-1 then handed SERRANO $400 in serialized government funds. UC-1 removed the heroin from the coffee mug and placed the coffee mug on the store shelf. UC-1 then exited Family Dollar and proceeded in his/her vehicle with CS-1 to a prearranged location where s/he met with me and other agents. UC-1 then turned over the substance purchased from SERRANO and the remaining $50.00 in government funds to me. The substance was later sent to the DEA Northeast Laboratory for analysis and tested positive for the presence of heroin.

32.     After conducting the drug transaction and receiving the drug proceeds, agents observed SERRANO exit Family Dollar and walk directly to Target Location #2 without making any stops or meeting with anyone.

**April 7, 2011 Undercover Purchase of Heroin from PEREZ**

33.     On April 7, 2011, UC-1 purchased approximately ten grams of heroin from PEREZ for $700. At approximately 3:25 p.m. on April 7, 2011, UC-1 placed a consensually recorded telephone call to PEREZ at (978) 401-7083. UC-1 asked PEREZ if he remembered him/her and if s/he could meet PEREZ to purchase ten grams of heroin. PEREZ then asked if he could call UC-1 back.

34.     At approximately 3:38 p.m. that same date, UC-1 received an incoming call from PEREZ originating from the same telephone [978-401-7083]. UC-1 consensually recorded the call. PEREZ informed UC-1 that he would meet him/her but not until 4:30 p.m. PEREZ also confirmed during the conversation that UC-1 was purchasing ten grams by saying, "You want ten, right?" PEREZ told UC-1 he would tell him/her where they would meet when he called UC-1 back.

35.     At approximately 4:17 p.m., UC-1 received an incoming call from PEREZ

12

originating from the same telephone number [978-401-7083]. UC-1 consensually recorded the call. PEREZ informed UC-1 that he was running late. PEREZ said he had to go to Beverly and would not be available for another half hour. UC-1 told PEREZ that s/he was near Walmart on the Lynnway. PEREZ agreed to meet UC-1 at that Walmart.

36.     At approximately 5:02 p.m., UC-1 received an incoming call from PEREZ originating from the same telephone number [978-401-7083]. UC-1 consensually recorded the call. PEREZ stated that he was on his way, and UC-1 told PEREZ that s/he was in his/her car in the Walmart parking lot. Agents then followed UC-1 to the front parking lot of Walmart on the Lynnway in Lynn, MA. Prior to the transaction, UC-1 was provided $700 in serialized government funds to make the purchase of heroin. UC-1 was also in possession of a concealed audio/ video recorder and transmitter so agents could monitor and record the transaction.

37.     At approximately 5:10 p.m., agents observed PEREZ arrive at the Walmart parking lot driving a red Toyota Camry, MA Reg. 74DB91. Agents saw PEREZ park the Camry directly behind UC-1's vehicle. Less than a minute later, agents observed PEREZ pull out, drive around the parking lot and then come to a stop in another parking space a few rows over from UC-1. UC-1 next pulled out his vehicle and parked directly behind PEREZ's vehicle. PEREZ then walked to UC-1's vehicle and got into the front passenger seat. After exchanging greetings, PEREZ placed one plastic bag containing suspected heroin into the cup holder of UC-1's vehicle. UC-1 then handed PEREZ the $700.00 in serialized government funds. PEREZ counted the money while still sitting in the seat. PEREZ then got out of UC-1's vehicle, walked back to the red Toyota Camry and departed. UC-1 then proceeded to a pre-arranged location where s/he met with other agents. UC-1 then turned over the substance purchased from PEREZ to me. The

13

substance purchased from PEREZ was sent to the DEA Northeast Regional Laboratory in New York for analysis and tested positive for the presence of heroin.

38.    Agents followed PEREZ from the deal directly to Union Street in Lynn, MA. Agents observed PEREZ pull over and park across from Target Location #2. Agents observed PEREZ meet with another male and then enter a restaurant across from Target Location #2.

**May 2, 2011 Undercover Purchase of Heroin from FRANCIS**

39.    On May 2, 2011, CS-1 introduced another undercover agent ("UC-2") to FRANCIS. UC-2 subsequently purchased approximately 10 grams of heroin directly from FRANCIS.

40.    In the afternoon of May 2, 2011, CS-1 placed a telephone call to FRANCIS at (781) 853-3109. UC-2 monitored the ensuing conversation. CS-1 told FRANCIS that s/he was in the Lynn, MA area with UC-2 and wanted to meet him. FRANCIS told CS-1 that he was at the "store", referring to Target Location #2, and agreed to meet UC-2. FRANCIS further stated that he was going to go to the "Cave" to pick up a ten-gram sample of heroin for UC-2 to try.

41.    Agents then followed CS-1 and UC-2 as they drove together to Target Location #2. Prior to the transaction, UC-2 was provided with $700 in serialized government funds to purchase the heroin. UC-2 was also in possession of a concealed transmitter and digital audio/video recorder so agents could monitor and record the meeting. At approximately 3:10 p.m., UC-2 and CS-1 arrived at Union Street and parked UC-2's vehicle across from Target Location #2. CS-1 then called FRANCIS at (781) 853-3109 to notify FRANCIS of their arrival.

14

FRANCIS asked CS-1 and UC-2 to meet him on Sachem Street in Lynn, MA.[3]

42.     Agents then followed CS-1 and UC-2 as they drove in UC-2's vehicle to Sachem

Street in Lynn, M, where UC-2 parked his/her vehicle. At approximately 3:30 p.m., agents

observed FRANCIS enter UC-2's vehicle. FRANCIS gave UC-2 a bag containing suspected

heroin. UC-2 then gave FRANCIS $650 in serialized government funds.

43.     Agents then observed FRANCIS exit UC-2's vehicle, walk to a green Nissan

Maxima, MA Reg. 659EF1, and depart the area. Agents followed FRANCIS to Union Street in

Lynn, MA, and observed him pull into a parking lot across the street from Target Location #2.

FRANCIS was alone at that time.

44.     UC-2 and CS-1 proceeded to a prearranged location where they met with myself

and other agents. UC-2 then turned over the substance purchased from FRANCIS and the

remaining $50.00 in government funds to me. The exhibit was later sent to the DEA Northeast

Regional Laboratory for analysis. The results are still pending. I have personally viewed the

substance purchased from FRANCIS, however, and based upon my training and experience, it

appears to be heroin.

## May 10, 2011 Undercover Purchase of Heroin from FRANCIS

45.     On May 10, 2011, FRANCIS sold fifty grams of heroin to UC-2 for $3,000 with

CS-1 acting as the middleman between FRANCIS and UC-2. Prior to the sale, agents followed

---

[3]According to CS-1, FRANCIS and SERRANO previously had a drug stash apartment
located at 11 Sachem Street, 3rd Floor, Lynn, MA. The electric service to that apartment was also
in Susan ALAMO's name. However, after a disagreement between FRANCIS and SERRANO
in April 2011, FRANCIS moved his stash apartment from Sachem Street. In my opinion,
FRANCIS directed CS-1 and UC-2 to Sachem Street (and actually identified an apartment
ostensibly belonging to him) in an effort to misdirect any attention to Target Location #1.

FRANCIS to Target Location #1 after he informed CS-1 that he was going to get the heroin

ready. After retrieving the heroin with an individual known to CS-1 as "MENOR," FRANCIS

gave the heroin to CS-1 to deliver to UC-2 in exchange for $3,000.00. Following the purchase,

CS-1 delivered the drug proceeds to MARTINEZ inside of Target Location #2.

46.     At approximately 10:00 a.m. on May 10, 2011, agents established physical

surveillance in the vicinity of Target Location #1. It should be noted that due to Target Location

#1's location on a short dead-end road, physical surveillance is difficult to accomplish without

risking detection by the Target Subjects. Upon arrival, no known vehicles were observed at the

residence. At approximately 10:55 a.m., agents observed FRANCIS's black Infiniti SUV, MA

Reg. 6LX880, drive down Shillington Avenue towards Target Location #1 with one female

occupant, believed to be MARTINEZ. At approximately 11:50 a.m., agents observed a green

Nissan Maxima, MA Reg. 659EF1, which FRANCIS was seen operating on May 2, 2011, drive

down Shillington Avenue towards Target Location #1. At approximately 12:00 p.m., agents

observed the Maxima depart from the direction of Target Location #1 with FRANCIS and

MENOR. Surveillance was maintained on the vehicle. At approximately 12:05 p.m., agents

observed the Maxima pull into a parking lot located behind a restaurant across the street from

Target Location #2 in Lynn, MA. From their vantage point, agents could not see FRANCIS and

MENOR. There is, however, a rear entrance to the restaurant accessible from the parking lot.

47.     CS-1, under the direction of agents, then met with FRANCIS inside the restaurant

across the street from Target Location #2. At approximately 12:15 p.m., agents observed

MARTINEZ arrive in the black Infiniti, MA reg. 6LX880, and pull into the parking lot behind

the restaurant across from Target Location #2.. An agent observed MARTINEZ walk across the

16

street and enter Target Location #2.

48.    At approximately 12:20 p.m., an agent observed CS-1, FRANCIS and MENOR
exit the restaurant and walk across the street to Target Location #2. FRANCIS was wearing a red
tee shirt and a black vest and MENOR was wearing a white tee shirt and blue jeans.

49.    At approximately 12:48 p.m., UC-2 placed a call to CS-1's telephone. As
planned, CS-1 then placed FRANCIS on the telephone to speak with UC-2. During the recorded
call, UC-2 ordered 50 grams of heroin from FRANCIS.

50.    At approximately 12:51 p.m., agents observed FRANCIS and the MENOR exit
Target Location #2 and walk to the parking lot behind the restaurant across from the store.
Agents then observed the green Maxima pull out of the lot with MENOR driving and FRANCIS
in the front passenger seat. Surveillance was maintained on the vehicle.

51.    At approximately 12:52 p.m., CS-1 notified agents that FRANCIS was on his way
to pick up the heroin for UC-2.

52.    At approximately 12:59 p.m., agents observed the Maxima drive down Shillington
Avenue towards Target Location #1. The vehicle did not make any stops along with way.
Approximately one minute later, I observed the Maxima parked unoccupied directly in front of
Target Location #1.

53.    At approximately 1:08 p.m., I observed FRANCIS and MENOR exit the right
front right door of 17 Shillington Avenue leading to Target Location #1. I observed MENOR
carrying a blue baseball bag over his shoulder. I observed MENOR enter the driver's side of the
Maxima while FRANCIS entered the front passenger side.

54.    At approximately 1:15 p.m., agents observed the Maxima pull out of Shillington

17

Case 1:11-cr-10231-RGS   Document 1-6   Filed 05/19/11   Page 18 of 26

Avenue and immediately pull over and park on Linwood Street in Lynn, MA. Agents observed

FRANCIS and MENOR exit the Maxima and walk down Linwood Street. Agents observed

MENOR carrying the same blue baseball bag. Agents then observed a gray, livery-type Mercury

Marquis, MA Reg. 191SPB, pull up and stop at the end of Linwood Street where it intersects

with Linwood Road. Agents next saw FRANCIS and MENOR enter the vehicle. Surveillance

was then maintained on the Marquis as it traveled directly to the vicinity of Target Location #2.

In my opinion, the actions of FRANCIS and MENOR in switching vehicles were consistent with

counter surveillance or an effort to evade law enforcement detection.

55.     At approximately 1:25 p.m., agents observed the Mercury Marquis pull over on

Buffum Street in Lynn, MA, just around the corner from Target Location #2. Agents then

observed FRANCIS and MENOR exit the Marquis and walk directly to Target Location #2.

Agents observed FRANCIS and MENOR, who was still carrying the blue baseball bag, enter

Target Location #2.

56.     At approximately 1:29 p.m., UC-2 received a telephone call from CS-1 and

FRANCIS, which UC-2 consensually recorded.  During the call, FRANCIS told UC-2 to give

CS-1 the money for the heroin.

57.     At approximately 1:32 p.m., agents observed FRANCIS, MENOR and CS-1 exit

Target Location #2 and cross Union Street.

58.     At approximately 1:34 p.m., UC-2 arrived and parked his/her vehicle across the

street from Target Location #2. CS-1 then walked over and entered into UC-2's vehicle. CS-1

handed UC-2 a bag of suspected heroin, which CS-1 had obtained from FRANCIS. UC-2 then

gave CS-1 the $3,000 in drug proceeds, which FRANCIS had instructed CS-1 to give to

18

MARTINEZ inside of Target Location #2. CS-1 then exited UC-2's vehicle and agents observed CS-1 walk to Target Location #2 and enter the business. Approximately one minute later, agents observed CS-1 exit Target Location #2 and walk back to UC-2's vehicle. UC-2 and CS-1 then departed the area together and proceeded to a prearranged location where UC-2 handed the substance purchased from FRANCIS through CS-1 to me. The exhibit was sent to the DEA Northeast Regional Laboratory for analysis. The results are still pending. I note, however, that I have observed this substance, and in my training and experience, it appears to be heroin.

59.     Agents (including myself) then debriefed CS-1 regarding the transaction. CS-1 stated that at or about 12:00 p.m., CS-1 met with FRANCIS and MENOR in D'Lamar Restaurant. After meeting in the restaurant, CS-1, FRANCIS and MENOR walked to Target Location #2. UC-2 then called CS-1, who put FRANCIS on the telephone. UC-2 ordered the heroin from FRANCIS. After the call, FRANCIS then asked MARTINEZ for the keys to the "house" and told CS-1 that he was going to get the heroin ready. CS-1 stated that FRANCIS left with his drug runner MENOR.

60.     At approximately 1:24 p.m., FRANCIS and MENOR returned to Target Location #2. According to CS-1, MENOR was carrying a blue baseball bag. Once inside the store, CS-1 observed FRANCIS take two packages out of his pants pockets. One package contained 50 grams of heroin for UC-2 and the other contained 100 grams of heroin for another customer. FRANCIS told CS-1 to take the 50 grams, deliver it to UC-2, and bring the drug money back to MARTINEZ inside Target Location #2. FRANCIS also told CS-1 that he was going with MENOR and another runner named RUBIN to deliver the other package containing 100 grams of heroin to another customer.

19

61. CS-1 then called UC-2 and put FRANCIS on the telephone. FRANCIS instructed UC-2 to give CS-1 the money for the heroin. CS-1 then met with UC-2 and gave UC-2 the heroin in exchange for $3,000 in government funds. CS-1 stated s/he then delivered the money to MARTINEZ inside Target Location #2. According to CS-1, s/he observed MARTINEZ place the money inside a hidden compartment built into the wall behind the counter inside Target Location #2. CS-1 stated that the compartment is located behind some hooks with socks and wrist bands that are for sale inside the store.

## May 13, 2011 Undercover Purchase of Heroin from PEREZ

62. Between 10:00 a.m. and 11:00 a.m. on May 13, 2011, UC-1 engaged in several calls with PEREZ about obtaining five grams of heroin. During the calls, PEREZ agreed to meet with UC-1 at the North Shore Mall in Peabody, MA. PEREZ informed UC-1 that he would need to pick up the heroin prior to meeting UC-1.

63. At approximately 11:22 a.m. that same date, agents observed PEREZ walk from his residence at 95 Main Street, Peabody, MA, meet with an unknown Hispanic male wearing jeans and a white sweatshirt, and then depart in a red Toyota Camry, MA Reg. 74DB91. Agents maintained surveillance on the Camry from the residence to Lynn, MA.

64. At approximately 11:35 a.m., agents observed PEREZ pull into a Stop & Shop parking lot on Boston Street in Lynn, MA. Agents observed the unknown Hispanic male wearing the white sweatshirt exit the vehicle and observed PEREZ depart the lot alone in the vehicle.

65. Agents then followed PEREZ directly to Wendy's Restaurant on Boston Street in Lynn, MA. An agent then entered the restaurant and observed PEREZ meeting with FRANCIS's

runner MENOR.

66.     At approximately 11:45 a.m., agents observed MENOR and PEREZ exit Wendy's Restaurant together. Agents next observed PEREZ depart in the Toyota Camry and MENOR depart in the green Nissan Maxima, MA Reg. 659EF1, which FRANCIS has been observed driving in the past, as detailed above.

67.     Agents maintained surveillance on PEREZ directly to the North Shore Mall. At approximately 12:12 p.m., PEREZ pulled into the North Shore Mall parking lot and met with UC-1. UC-1 had $350 in serialized government currency and a concealed video/audio device to record the meeting. UC-1 entered PEREZ's Toyota Camry. PEREZ handed UC-1 a clear plastic bag containing suspected heroin, and UC-1 handed PEREZ the $350 in government funds. UC-1 then exited the vehicle and PEREZ departed the area. The exhibit was sent to the DEA Northeast Regional Lab for analysis. Results of the analysis are pending. I note, however, that I have observed this substance, and in my training and experience, it appears to be heroin.

## III.     Other Informant Contact

### May 12, 2011 Meeting Between CS-1 and SERRANO in Target Location #2

68.     On May 12, 2011, agents met with CS-1 in Lynn, MA. CS-1 reported that on the evening of May 11, 2011, CS-1 was with FRANCIS and observed FRANCIS do several heroin deals in Lynn, MA. CS-1 observed FRANCIS sell 500 grams of heroin to an unknown Cambodian male who was driving a black Mercedes and 100 grams of heroin to an unknown Hispanic male.

69.     CS-1 reported that after selling the heroin on May 11, 2011, FRANCIS went to Target Location #2 and met with MARTINEZ. CS-1 observed FRANCIS and MARTINEZ take

21

the drug proceeds that FRANCIS had collected from the drug sales, as well as several stacks of cash that were stashed inside of Target Location #2, and wrap the cash in cellophane wrap. MARTINEZ then placed the cash, along with a money counting machine, into a large shopping bag and carried the bag out of the store.

70.     CS-1 inquired about where MARTINEZ was going with the money and was told that she was driving to New York early the next morning. CS-1 further learned that MARTINEZ was delivering the proceeds to a heroin source who lives in the Washington Heights area of New York, NY.

71.     At approximately 2:45 p.m. on May 12, 2011, agents provided a digital recorder to CS-1. CS-1 then walked to Target Location #2 and entered the premises in an effort to determine if s/he could obtain additional information about MARTINEZ's trip to New York.

72.     At approximately 3:02 p.m., agents met CS-1 at a prearranged location near Target Location #2. CS-1 returned the digital recorder, which contained an audio recording of a meeting between CS-1 and SERRANO inside Target Location #2.

73.     Agents then debriefed CS-1 regarding the meeting. CS-1 stated that SERRANO was the only one inside the store. SERRANO told CS-1 that FRANCIS and MARTINEZ were in New York together and would be back later that evening. CS-1 told SERRANO that CS-1 had been calling FRANCIS all morning because CS-1 had a customer, referring to UC-2, who was looking to purchase 200 grams of heroin. SERRANO then called FRANCIS on the phone. FRANCIS told CS-1 that FRANCIS had 200 grams left at his house and that SERRANO had the key to FRANCIS's house and could pick up the heroin for CS-1. In my opinion, FRANCIS's reference to having 200 grams left at his "house" means that he has 200 grams of heroin stored at

22

17 Shillington Avenue, 2nd Floor, Lynn. CS-1 told FRANCIS, however, that UC-2 had already obtained the heroin from someone else because FRANCIS did not answer the phone that morning.

**May 16, 2011, Meeting Between CS-1 and FRANCIS**

74.    On May 16, 2011, CS informed agents that he was with FRANCIS when s/he told FRANCIS that he had a customer looking to purchase 500 grams of heroin. FRANCIS responded, "no problem, I have it." CS-1 then state that UC-2 also needed 300 grams of heroin in the next few days. Again, FRANCIS responded that it would not be a problem, he had the product.

## IV.    May 18, 2011 Seizures of Heroin, Execution of Search Warrants, and Arrests of Defendants

75.    On May 18, 2011, at approximately 1:35 p.m., CS-1 informed agents that FRANCIS would be leaving Target Location #2 to pick up 200 grams of heroin. At approximately 1:40 p.m., agents observed MENOR pull up in front of Target Location #2 in a green Nissan Maxima, MA Reg. 659EF1, and pick up FRANCIS. Agents then observed FRANCIS and MENOR depart in the green Maxima, and surveillance was maintained on the vehicle.

76.    At approximately 2:00 p.m., agents observed the green Maxima pull down Shillington Avenue to Target Location #1. Agents did not observe the vehicle make any stops on route to Target Location #1.

77.    At approximately 2:30 p.m., agents observed the same green Maxima depart Target Location #1. Agents maintained surveillance on the vehicle for several blocks and then

23

stopped the vehicle with the assistance of the Lynn, MA Police Department. Agents and officers approached the vehicle and observed MENOR to be its sole occupant. Agents then observed a bag in plain view on the floor in front of the right passenger seat of the vehicle. Agents next looked into the bag and observed a powder substance wrapped in red plastic wrap, which based on the agents' training and experience, appeared to be heroin. Agents seized the contents of the bag and then placed MENOR under arrest.

78.     Several minutes after MENOR's arrest, agents observed FRANCIS walk from Target Location #1 down Shillington Avenue. At that point, FRANCIS was placed under arrest, and as a result of a search incident to his arrest, agents found approximately ten small bags of suspected heroin and over $2,000 in cash on his person.

79.     Agents then executed a search warrant at Target Location #1. Seized as a result of the search warrant were one large bag and several smaller bags of suspected heroin inside the master bedroom closet. Agents also seized several stacks of United States currency, estimated to be several thousand dollars, most of which was located in MARTINEZ's son's bedroom closet. In addition, agents seized, among other things: two digital scales, red plastic wrapping material, and several documents that appeared to be false Puerto Rico driving records, along with materials and equipment believed to be used to manufacture such records.

80.     Agents also executed a search warrant at Target Location #2. Several false identification documents with MARTINEZ's photo in different names were seized from that location. MARTINEZ, who was present when agents entered Target Location #2, was interviewed by ICE agents regarding her true identity. MARTINEZ admitted that her real name is Michelle Martinez, and that she was previously deported from the United States. MARTINEZ

24

was then arrested and transported to the Lynn, MA Police Department. Because she had not been Mirandized earlier that day, DEA agents read MARTINEZ her Miranda rights and then re-interviewed her on tape. She then admitted once again that she had previously been deported from the United States.

81.     Prior to executing the search warrant at Target Location #2, agents observed PEREZ depart in a red Toyota Camry, MA Reg. 74DB91, from Target Location #2. Agents followed him for a short period and then lost sight of him. Shortly thereafter, agents relocated PEREZ in the vicinity of his residence in Peabody, MA, and placed him under arrest.

82.     Based on preliminary analysis, and my training and experience, I believe that the total amount of heroin seized from on May 18, 2011 is more than 100 grams.

83.     Following the above-described arrests, all four arrestees–FRANCIS, MENOR, MARTINEZ, PEREZ–were booked and fingerprinted at the Lynn, MA Police Department. ICE agents then ran the fingerprints of all four arrestees in an ICE database, and as a result, the agents determined that MARTINEZ had been previously deported on August 18, 2004, and that FRANCIS had been previously deported on three occasions, specifically, on October 5, 1993, on September 30, 1998, and on May 10, 2003.

25

## CONCLUSION

84.    Based on the information set forth above, I believe probable cause exists to

conclude that the Target Subjects have conspired to distribute and to possess with intent to

distribute heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §846. I therefore

respectfully request that the Court issue a criminal complaint in this matter.

Christian Brackett
Special Agent
Drug Enforcement Administration

Subscribed and sworn to
before me, this 19th day
of May 2011

HONORABLE ROBERT B. COLLINGS
United States Magistrate Judge

26